Harter, J. (orally).
This case, as appears from the record, comes into this court on error from the docket of L. M. Barrick, one of the justices of the peace in and for Canton township in this county. The case was originally commenced there by the filing of an affidavit against the plaintiff in error, defendant below, Leo Abt, charging him, in substance, as follows:
“That he did on or about the 3d day of January, 1908, in the county of Stark and state of Ohio, unlawfully and purposely have in his possession for the purpose of sale one aigrette, the plumage of a heron, a wild bird, being other than a game bird, against the peace and dignity of the state of Ohio.”
The defendant plead not guilty to the affidavit, and trial was had before the justice, and a number of motions and a de *312 murrer were filed, and a large number of exceptions taken in the” trial of the ease below; finally a motion for new trial was filed and overruled, and the case was brought up here on error, plaintiff in error filing a motion for leave to file his petition in error, which was granted by the court. Probably the easiest way to get the matters the court is called upon to decide plainly into the opinion, is to take them up substantially in the order in which they stand upon the record and the petition in error.
The first error complained of by the plaintiff in error is that the court erred in overruling the motion of the defendant to quash the affidavit, to which the defendant at the time excepted. It is not necessary for the court to pass upon that ground of alleged error for the reason that the motion to quash was filed after the plea of not guilty and also after a demurrer had been fi’ed so that alleged error would be waived.
The second ground of error which the plaintiff in error complains of is that the court erred in overruling the motion of the defendant demanding the right to a trial by jury, to which the defendant at the time excepted. The court need not spend any time upon that alleged error because the Supreme Court has determined it and it has been determined against the contention of the plaintiff in error.
The third ground of alleged error in the petition in error is that the court erred in the admission of certain testimony offered on behalf of the state which was objected to by the defendant and to which defendant at the time excepted. The view that the court takes of the case upon final consideration of it is such that it is not necessary for the court to further dwell upon that alleged error.
The fourth alleged error assigned in the petition in error is that the court erred in excluding certain testimony on behalf of the defendant to which the defendant at the time excepted. The remark which I have just made in regard to the third assignment of error applies to this assignment of error also.
The fifth ground of alleged error, or fifth assignment of error in the petition in error is as follows: that the court erred in overruling the motion of the defendant made at the- conclusion of the state’s case to find the defendant not guilty, to which the *313 defendant at tbe time excepted. I wiU consider that alleged error in connection with the sixth, seventh, eighth and ninth assignments of error in the petition in error, because they are all similar to the alleged error of the justice of the peace in overruling the motion of the defendant below for a new trial. I do that for the purpose of brevity as they all bear upon substantially the same question and the court need not consider them all separately.
Before proceeding further I wish to call attention to the contention of the counsel for defendant in error in this ease, the state of Ohio, that there is no bill of exceptions in this ease and that none appears in the record because it does not appear in any entry in the justice’s docket, a transcript of which is filed here, that it was properly taken; in other words' it was stated by counsel in the argument of the case because there was no journal entry allowing it. In regard to the objection to the jurisdiction of the court which is raised by the counsel for defendant in error I have this to say, that it is no longer necessary to journalize a bill of exceptions, or to have it appear upon the record that it has been allowed, so that a great many of the authorities which were cited to sustain that position of the counsel are wholly irrelevant here, because it is now specially and specifically provided by statute that a jurnal entry of that kind is not necessary, and that it is sufficient evidence of the allowance of a bill of exceptions where it appears on the bill itself that the court corrected and allowed and signed it, provided of course it is filed in the ease. Then in addition to that the section of the statute under which bills of exceptions are taken before justices of the peace, is Section 6565 of the Revised Statutes, and the decisions which were cited in support of the contention that there was no bill of exceptions in this case could only be applicable by analogy at any rate; but I think that under the provisions of the present statute there is a bill of exceptions in this ease, and I think that the bill in the manner in which it was taken conforms substantially with the provisions of the statute in that regard.
Now I think that that disposes of all of the alleged errors to which the defendant below took exceptions and to which I have heretofore alluded except the fifth, sixth, seventh, eighth and *314 ninth, which really involve the question as to whether or not there was sufficient evidence in this case to have justified the justice in finding .against the defendant and announcing a judgment against him, and also the question as to whether or not the affidavit charged an offense against the defendant below.
The charge is, in substance, that the defendant did at the time set out in the affidavit have in his possession and for the purpose of sale the plumage of a heron, a wild bird, being other than a game bird. The contention is that that does not charge any offense under the laws of the state of Ohio, and to determine that it involves the question of the construction of Section 22 and Section 25 of the act of May 9th, 1908, which is entitled “An.act to revise and consolidate the laws relating to the .appointment, powers and duties of the commissioners of fish and game. ’ ’
Before doing that there are several propositions of law and several findings of fact I think that the court should call attention to. In the first place in undertaking to construe any statute the court should look .as is said in Blackstone to the old law, the mischief and the remedy, or’in this case, perhaps, to the mischief and the remedy as well as to the statute itself. In ("cases where the statute is ambiguous the court may look to the purpose or intention of the Legislature for the purpose of throwing light upon the meaning of the statute. Of course the question in construing a statute is not ultimately what was the intention and purpose of the Legislature in enacting a law, but what did the Legislature in fact enact, and the intention and purpose can only be looked .at for the purpose of throwing light upon that subject, and for the same purpose the court may look ^at the preamble of the act.
There is another thing that the court should keep in mind, I think, in construing this statute and that is that the Legislature is not presumed to be enacting laws that are not necessary; it is not supposed to do a vain thing. Those are the leading principles of the law to which I desire to call attention of counsel before applying them to this statute.
Now there 'are some facts that I think the court ought to call the attention of counsel to that appear in the record. I think that it is perfectly plain from the evidence that the heron is a *315 wild bird. I think it is perfectly plain that it is a water fowl, not only from the evidence' of the defendant below and his witnesses but also from the testimony and the evidence of witnesses for the state. If a water fowl is a bird which frequents water, that lives on or near lakes, rivers or on or near the ocean, why then the heron undoubtedly is a water fowl, because the proof, it seems to me, is entirely one way upon that subject. It is also perfectly clear from the proof that this heron is not a native of Ohio. It is not a bird that has its habitat in Ohio during any portion of the year. It is not a migatory bird; it is not a transient bird; it is not even a bird of passage.' Not to exceed six of them have been seen in the state of Ohio so far as the proof shows for forty years, and not a single one has been seen in Ohio, so far as the proof shows, for six years. Now with these legal principles as postulates, together with the findings of facts as above stated, I will endeavor to construe -the statute. The sections to be construed are Section 22 and Section 25. Section 22 reads as follows:
“No person shall catch, bill, injure, pursue or have in his possession either dead or alive, or purchase, expose for sale, transport or ship to a point within or without the state a turtle or mourning dove, sparrow, nut-hatch, warbler, flicker, vireo, wren, American robin, catbird, tanager, bobolink, blue jay, oriole, groesbeek or redbird, creeper, redstart, waxwing, woodpecker, hummingbird, killdeer, swallow, bluebird, blackbird, meadow lark, bunting, starling, redwing, purple martin, brown thresher, American goldfinch, chewink or ground robin, .pewee or phoebe bird, chickadee, fly-catcher, gnat catcher, mousehawk, whippoorwill, snowbird, titmouse, gull, eagle, buzzard, or- any wild bird other than -a game bird (I call attention especially to that phrase because it is vital in the construction of this statute, ‘or any wild bird other than a game bird’). No part of the plumage, skin or body of such birds shall be sold or had in possession for sale.”'
The other section of the statute (Section 25)_ reads as follows:
“No person within this state shall catch, kill, injure, or pursue with such intent a Yirginia partridge or quail except from the fifteenth day of November to the fourth day of December, both inclusive; a woodcock or Carolina dove, except from the first day of September to the fourth day of December, both inclusive; a rail, shore bird, plover, snipe, wild duck, wild goose, wild *316 swan, coot or mud hen, except from the first day of September to the thirty-first day of December, both inclusive, and from the first day of March to the twentieth day of April, both inclusive; or a ruffed grouse, Mongolian pheasant, English pheasant, ring neck pheasant, or other pheasant, before the fifteenth day of November, 1913, or after that date except from the fifteenth day of November to the fourth day of December, both inclusive; but no person shall catch, kill, injure or pursue a wild duck or water fowl on Sunday or Monday of any week, or catch, kill, injure or pursue, or shoot such water fowl before sunrise or after sunset of any day during the time fixed herein when it shall be lawful to kill them. The birds named in this section shall be known and classed as game birds in contradistinction to all other birds. ’ ’
Now then if the heron, the plumage of which for the purpose of sale the defendant is charged with having at the time laid in the affidavit, is a wild bird other than a game bird, then the defendant is charged with an offense in the affidavit. If it is not a wild bird other than a game bird then he is not charged with the commission of any offense under the laws of the state of Ohio in that affidavit. Let me say right at this point that there can be no controversy about the fact that the defendant below did have the plumage of a white heron in his possession for the purpose of sale. The question here turns upon the proposition as to whether or not the white heron is a wild bird other than a game bird under the definition in this statute. Some evidence has been introduced—quite considerable evidence in fact—upon the part of the defendant below, plaintiff in error, tending to show that the white heron was hunted and shot for the purpose of food, thus tending to show that it was a game bird. I do not think that testimony is relevant to the issue that is involved in the case at all. If there were not a definition in the statute of what a game bird is then the evidence would be very relevant and very pertinent, but inasmuch as the statute itself defines a game bird you can not look to the definition of ornithologists, nor the opinions of. hunters or trappers upon the subject of what is or what is not a game bird. The statute itself determining what is a game bird the court must be governed by that. Now what is the language of the statute in that regard? It is as follows: ‘ ‘ The birds named in this section shall be known and classed as game birds in contradistinction to all other birds.” *317 What does that mean? Does that mean that because the white heron or the heron is not specifically mentioned that therefore it is not a game bird? If it does mean that why then the defendant is charged with an offense against the laws of the state of Ohio; if it does not mean that then he is not charged with the commission of .an offense against the laws of the state of Ohio, and the demurrer ought to have been sustained.
I thought when I first looked at that statute that it was perfectly plain that the white heron was ine’uded within the definition of a game bird, and then after I had made up my mind to that I looked at the statute more critically and I about reached the conclusion that I had* made' a mistake in the matter and that it was not a game bird within the meaning of the statute and thereupon I set to work to reeonstrue the statute for the purpose of ascertaining the true meaning if I could.
There are no precedents here, and the court has to go it alone. Now what does the phrase “the birds named in this section” mean? In order to get anything like a satisfactory solution of the meaning of that phrase you must understand what a name is. A name is the title or the appellation of a thing, an individual, or person; or it is the specific appellation of a person, thing or a class. Now what does this statute say? It uses this general comprehensive term “or water fowl,” so that in that section of the statute “water fowl” is mentioned. The heron is a water fowl; and if it is a water fowl, and it is one of the birds mentioned in the statute, why then it is a game bird.
Now I am fully aware of the fact that it could be well argued here that the birds named are those that are named simply as individuals and not as a class, but the term “name” includes both the class and the individual, and the class name as used here is ‘ ‘ water fowl, ’ ’ which includes the white heron. The proof' is overwhelming that the white heron is a water fowl. Therefore it seems to me that under the proper-construction which ought to be given to this section of the statute—the strict construction that ought to be given to it under the well known legal principles of statutory construction—that the heron is a game bird. Could it be said, for example, that if instead of mentioning a rail, *318 shore bird, a plover, a snipe, a wild duck, a wild goose, a wild swan, coot or mud hen, the statute had said “a wild duck or other water fowl” that those birds that are specifically mentioned would not be included under the term “water fowl,” and if they are included there, why are they not included below, and if they are included below where the term “water fowl” is used, why isn’t every water fowl included? And if every water fowl is included in this generic use of the word, then the white heron is included. That the Legislature used the term “water fowl” in the generic sense, and that general use of the word should be applied to the construction of these sections of the statute and the construction of the statute in other parts it seems to me is pretty evident from an examination of the other parts of the statute. For instance where the word “squirrel” is used, if you do not give it a comprehensive general construction such as that suggested somebody might raise the question as to whether or not the term “squirrel” meant a white squirrel, or black squirrel, or red squirrel, or fox squirrel, or whether it included them all. The generic term includes them all just as the term “water fowl” should be held to include all water fowl. That is my view of the construction that ought to be given to this statute.
But suppose the court is wrong about it, then this is certainly an equivocal ambiguous statute, because if it had been properly drawn no doubt could have been introduced into the statute at all on the subject as to whether or not a white heron was included. If the party who drafted the statute had said, following the words ‘ ‘ wild duck ’ ’ in that portion of the statute which reads as f ollows, “But no person shall catch, kill, injure, or pursue a wild duels or water fowl” “or any of the above named water fowl” instead of “or water fowl” then-it would have excluded clear fy and positively the white heron. So that it is an equivocal statute even if my construction is not right.
It is a doubtful statute, and I think the defendant ought to have the benefit of the doubt. Suppose, for example, that the most reputable merchant in a city had gone to a first class lawyer to know whether or not he had the' right to sell the aigrette of a white heron and the lawyer had looked over this statute and after *319 considering it carefully had reached the same conclusion that the court has reached and put the same construction upon it, it does not make- any difference who the man might be, nor how high his character, nor how honest his purpose might be; if the other construction is put upon the statute he would be a criminal under the laws of the state after all that effort to try to find out what the law is, because in this particular class of eases his intent is a matter of no moment. ITis guilty knowledge is a matter of no moment whatever, for the mere possession of the plumage of a wild bird other than a game bird for the purpose of sale makes him a criminal under the law.
Now the state of Ohio has provided by wise laws, let us hope, that fish can not be taken in a trap, and that birds can not be taken in a trap, and I therefore do not believe it ever was the purpose or intention of the Legislature that its merchants should be taken in a trap.
Before the state of Ohio can ask the conviction of a man under a law of that kind, it ought to have a law that is clear and unequivocal, that defines the crime in such a way “that wayfaring men though fools shall not err therein,” and not an equivocal statute such as this. If the fish and game commissioner think it is of sufficient importance to have this statute amended so as to cover the white heron they can go to the Legislature and have that done, but it occurs to me from what I see in the record that if the Legislature understood that so far as the proof shows in this case that the white heron is not a native bird, it is not a bird of passage, it is' not a migatory bird, it is not a transient bird, that it is a mere straggler; that not over five or six of them have been seen in Ohio for forty years, and that not one has been seen so far as the proof shows in Ohio for six years, that it would not so amend it because it would be an unnecessary and a foolish thing to do.
Now for the reasons that I have thus stated somewhat at length because of the importance of the case, it will be the holding of the court that the white heron with the possession of the plumage of which the defendant below is charged at the time set out in the affidavit, is a game bird, and not a wild bird other than a game bird within .the definition of this statute, and that *320 therefore the defendant is not charged in the affidavit with the commission of any offense under the laws of the state of Ohio; and the judgment of the justice of the peace will therefore be reversed and the defendant discharged at the costs of the defendant in error; and the defendant in error may have an exception.